IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:14-CV-853-D

| | |
|---|---|
| ANTONIO HARLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM** |
| ) | **AND RECOMMENDATION** |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Antonio Harley ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for a period of disability and disability insurance benefits ("DIB") on the grounds that he is not disabled. The case is before the court on the parties' motions for judgment on the pleadings. (D.E. 28, 30). Both filed memoranda in support of their respective motions. (D.E. 29, 31). The motions were referred to the undersigned magistrate judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* D.E. 32). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I. BACKGROUND

A. Case History

Plaintiff filed an application for DIB on 21 May 2012, alleging a disability onset date of 1 January 2012. Transcript of Proceedings ("Tr.") 17. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 17. On 27 August 2013, a

hearing was held before an administrative law judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 34-67. A supplemental hearing was held on 7 November 2013, at which plaintiff and a different vocational expert testified. Tr. 68-102. The ALJ issued a decision denying plaintiff's claim on 14 February 2014. Tr. 17-32. Plaintiff timely requested review by the Appeals Council. Tr. 12-13. The Appeals Council allowed additional evidence (Tr. 831-41), but denied the request on 24 September 2014 (Tr. 1-5). At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 404.981. Plaintiff commenced this proceeding for judicial review on 22 December 2014, pursuant to 42 U.S.C. § 405(g). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 2); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6)).

  B.  **Standards for Disability**

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," the temporal criterion being known as the duration requirement. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1509 (defining duration requirement); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id*. § 423(d)(3).

The disability regulations under the Act ("Regulations") provide a five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in [20 C.F.R. § 404.1509], or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["Listings"] . . . and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 404.1520(a)(4).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

3

### C. Findings of the ALJ

Plaintiff was 46 years old on the alleged onset date of disability and 47 years old on the date of the hearing and supplemental hearing. *See, e.g.*, Tr. 30 ¶ 7. The ALJ found that plaintiff has a limited education (Tr. 30 ¶ 8) and past relevant work as a construction worker and a mechanics helper (Tr. 30 ¶ 6).

Applying the five-step analysis of 20 C.F.R. § 404.1520(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the date of alleged onset of disability. Tr. 19 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: degenerative disc disease of the cervical and lumbar spine, diabetes, obstructive sleep apnea, residual effects of right unicompartmental knee arthroscopy, obesity, depression, anxiety, and borderline intellectual functioning. Tr. 19 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 20 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform sedentary work:

> [T]he claimant can lift, carry, push and/or pull up to 10 pounds occasionally and lesser amounts frequently. He can sit for 6 hours in an 8-hour day and stand and/or walk 2 hours in an 8-hour day.

Tr. 20 ¶ 5.[1] He found, however, that plaintiff was subject to the following limitations:

> [T]he claimant can only occasionally push and pull with right lower extremity. He can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Additionally, the claimant can never climb ladders, ropes or scaffolds. The claimant must avoid concentrated exposure to hazards, including dangerous, moving machinery and unprotected heights. He is limited to simple, routine and repetitive tasks, with instructions limited to oral form or by short demonstration.

---

[1] *See* 20 C.F.R. § 404.1567(a) (defining sedentary work); s*ee also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Sedentary Work," http://www.oali.dol.gov/libdot htm (last visited 2 Dec. 2015). "Sedentary work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 404.1567.

> The claimant can sustain attention and concentration for 2-hour blocks at a time, and he can have only occasional interaction with supervisors, coworkers and the general public. Additionally, the claimant is limited to a low stress environment, defined as requiring no fast-paced production requirements and simple work-related decisions with few or no changes in the work setting.

Tr. 23 ¶ 5.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was unable to perform his past relevant work. Tr. 30 ¶ 6. At step five, the ALJ accepted the testimony of the vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of assembler, bench hand, and taper of printed circuits. Tr. 31-32 ¶ 10. The ALJ accordingly concluded that plaintiff was not disabled from the date of the alleged onset of disability, 1 January 2012, through the date of the decision, 14 February 2014. Tr. 32 ¶ 11.

### D. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

Where, as here, the Appeals Council considers additional evidence before denying a claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1-2.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. DISCUSSION

Plaintiff contends that the ALJ's decision should be reversed and DIB awarded or, alternatively, that this case be remanded for a new hearing on the ground that the ALJ erroneously determined that plaintiff did not meet Listing 12.05C for intellectual disability.[2] The court finds no error.

### A. Listings Generally

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. § 404.1525(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* § 404.1520(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F. 2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. § 404.1525(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. § 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

---

[2] Although plaintiff does not argue that his intellectual impairment medically equals Listing 12.05C, it does not for the same reasons that it does not meet the listing.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted by* Order (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

### B. Requirements of Listing 12.05C

To meet Listing 12.05C,[3] a claimant must meet three requirements. First, he must first satisfy the introductory diagnostic description for intellectual disability. *See* Listing 12.00A.

---

[3] Listing 12.05 reads in relevant part:

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>   . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

Listing 12.05C.

Specifically, the claimant must demonstrate "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period," that is, before the age of 22. Listing 12.05. General intellectual functioning is defined by the intelligence quotient ("IQ") obtained using one or more of the standardized, individually administered intelligence tests. *See* DSM-IV-TR 41.[4] Adaptive functioning "refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting." *Id.* at 42. Areas in which deficits in adaptive functioning may exist include "communication, self-care, home living, social/inter-personal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." *Jackson v. Astrue*, 467 Fed. Appx. 214, 218 (4th Cir. 2012) (citing *Atkins v. Virginia*, 536 U.S. 304, 309 n.3 (2002)).

In addition to the diagnostic description, a claimant must meet the two requirements relating to the severity of the intellectual disability. One is that the claimant must demonstrate a "valid verbal, performance, or full scale IQ of 60 through 70" ("IQ requirement"). The other is that the claimant must show "a physical or other mental impairment imposing an additional and

---

[4] The court notes that the current version of the DSM ("DSM-V"), which was in effect at the time of the ALJ's decision, removes IQ scores from the diagnostic criteria for intellectual disability, explaining that "[i]ndividual cognitive profiles based on neuropsychological testing are more useful for understanding intellectual disabilities than a single IQ score" and that "IQ test scores are approximations of conceptual functioning but may be insufficient to assess reasoning in real-life situations and mastery of practical tasks." DSM-V 37 (2013). However, to date, corresponding changes have not been made to the diagnostic description of Listing 12.05 or the severity requirements of Listing 12.05C. Moreover, the Social Security Administration ("SSA") has previously explained that the Listing 12.05 definition of intellectual disability was based on not only the American Psychiatric Association's definition in the DSM-IV, but also on the definitions used by three other leading professional organizations and that it does not "seek to endorse the methodology of one professional organization over another." *Technical Revisions to Medical Criteria for Determinations of Disability*, 67 Fed. Reg. 20018-01, 2002 WL 661740, at 20022 (SSA 24 Apr. 2002). For this reason, the court concludes that it remains appropriate to reference the diagnostic criteria in the DSM-IV in applying Listing 12.05C. *See Hightower v. Comm'r of SSA*, No. 1:14-2761-RBH-SVH, 2015 WL 5008668, at *17 (D.S.C. 12 June 2015) ("Listing 12.05 was not updated to reflect the changes present in DSM-5, which calls into question the general applicability of DSM-5 to evaluation of intellectual disability under the Listing."), *rep. & recomm. adopted by* 2015 WL 5008713, at *8 (20 Aug. 2015).

significant work-related limitation of function" ("additional impairment requirement"). Listing 12.05C.

   C.   **Analysis**

      **1. Additional Impairment Requirement**

Although the ALJ did not make an express finding that plaintiff has an additional physical or mental impairment that imposes significant work-related limitations, the parties do not dispute, and the court concludes, that plaintiff meets this requirement. As previously noted, the ALJ found plaintiff to have seven other severe impairments besides borderline intellectual functioning—degenerative disc disease of the cervical and lumbar spine, diabetes, obstructive sleep apnea, residual effects of right unicompartmental knee arthroscopy, obesity, depression, and anxiety. Tr. 19 ¶ 3. Additional impairments that are found to be severe within the meaning of the Regulations satisfy this prong of Listing 12.05C. *See Reynolds v. Colvin*, No. 6:13-CV-22604, 2014 WL 4852242, at *16 (S.D.W. Va. 19 Aug. 2014) ("[A]n additional severe impairment or combination of impairments will automatically establish the third prong of section 12.05C, as 'the Secretary has defined a severe impairment or combination of impairments as those which significantly limit an individual's physical or mental ability to do basic work activities.'" (quoting *Luckey v. U.S. Dep't of Health & Human Servs.,* 890 F.2d 666, 669 (4th Cir. 1989))), *rep. & recomm. adopted by* 2014 WL 4852250, at *6 (29 Sept. 2014). The ALJ's finding that plaintiff was unable to return to his past relevant work (Tr. 30 ¶ 6) also supports the determination on the additional impairment requirement. *See Flowers v. U.S. Dep't of Health & Human Servs.,* 904 F.2d 211, 214 (4th Cir. 1990) ("[I]f a claimant cannot return to his past relevant work, he has established a work-related limitation of function which meets the

requirements of § 12.05C."). Thus, as a matter of law, plaintiff meets the additional impairment requirement of Listing 12.05C.

### 2. IQ Requirement

On 18 September 2013, examining consulting psychiatrist Ernest K. Akapaka, Ph.D., administered the Wechsler Adult Intelligence Scale—Fourth Edition to plaintiff as part of a psychological evaluation. Tr. 824-26. The IQ scores obtained were 70 on verbal comprehension; 81 on perceptual reasoning; 74 on working memory; 81 on processing speed; and 72 on the full scale IQ. Tr. 825-26. The verbal comprehension score is, of course, in the qualifying range under Listing 12.05C. The other scores are not, falling in the range for borderline intellectual functioning, 71 to 84 under the DSM-IV-TR. DSM-IV-TR 740. This is the only IQ testing of plaintiff in the record.

Plaintiff contends that he meets the IQ requirement based on the verbal performance score of 70, pointing out that under the plain terms of Listing 12.05C a qualifying score on verbal performance alone is sufficient to meet the IQ requirement. He argues that "the ALJ did not question the validity of the IQ scores." (Pl.'s Mem. 8).

A fair reading of the ALJ's decision, however, shows that the ALJ clearly did reject the sufficiency of the verbal performance score. He did so on the grounds that the full scale score of 72 and the other scores, and plaintiff's past relevant work discredit the verbal performance score. He stated:

> The only IQ testing in the record reflects that [the claimant] obtained a full-scale IQ score of 72 in September 2013. (Exhibit 22F). While the claimant's representative has argued that the claimant meets Listing 12.05C based on the claimant's verbal comprehension index score of 70 in September 2013, this contention is rejected, as the claimant's other scores were in the borderline range.

> Further, the claimant's past relevant work, as detailed below, was at semi-skilled work (SVP-3 and SVP-4[5]).

Tr. 22 ¶ 4. The court finds no error in the ALJ's analysis.[6]

The ALJ was not required to accept the verbal performance score on its face. "An ALJ has the discretion to assess the validity of an IQ test result and is not required to accept it even if it is the only such result in the record." *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012). More particularly, an ALJ may "reject [IQ] scores if they are inconsistent with other substantial evidence in the record such as conflicting professional opinions or other record evidence indicating that the claimant is historically higher achieving or has more advanced functional capacities than would be expected from someone with a below-average [IQ]." *Maybank v. Astrue*, No. C/A 4:08-0643-MBS, 2009 WL 2855461, at *11 (D.S.C. 31 Aug. 2009) (citing 20 C.F.R. § 404.1527(d)(2)); *see also Powell v. Barnhart*, No. 6:04-CV-63, 2005 WL 1926613, at *4 (W.D. Va. 9 Aug. 2005) (holding that if an IQ score is "inconsistent with the remainder of evidence in the record on the claimant's daily activities and behavior, it need not be conclusive proof of [intellectual disability]").

The first ground cited by the ALJ—the inconsistency of the verbal performance score with the other IQ scores—was proper. The verbal performance score was at the high end of the qualifying range, and it was the only score in the qualifying range. Moreover, Dr. Akpaka

---

[5] An SVP level indicates "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT app. C § II. An SVP of 3 to 4 corresponds to semi-skilled work. Soc. Sec. Ruling 00-4p, 2000 WL 1898704, at *3 (4 Dec. 2000).

[6] In her memorandum, the Commissioner appears to concede that plaintiff meets the IQ requirement of Listing 12.05C because Dr. Akpaka "thought the test results were a valid estimate of Plaintiff's current functioning." (Comm'r's Mem. 9). However, for the reasons explained, the court finds that the ALJ properly discounted this score. Even if the ALJ were deemed to have erred in rejecting the verbal performance score, the error would be harmless because, as detailed in the next section, the ALJ's determination that plaintiff did not meet the deficits in adaptive functioning requirement is proper and thereby his ultimate determination that plaintiff failed to meet Listing 12.05C, which requires that all three of its requirements be satisfied, would be proper as well. *See, e.g., Garner v. Astrue*, 436 Fed. Appx. 224, 226 n.* (4th Cir. 2011) (applying *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *Huffman v. Colvin*, No. 1:10CV537, 2013 WL 4431964, at *4 & n.7 (M.D.N.C. 14 Aug. 2013).

12

Case 5:14-cv-00853-D   Document 33   Filed 12/02/15   Page 12 of 20

diagnosed plaintiff with borderline intellectual functioning, not intellectual disability. Tr. 826; *see also Weedon v. Astrue*, No. CIV.A. 0:11-2971-DCN, 2013 WL 1315311, at *7 (D.S.C. 31 Jan. 2013) (affirming the ALJ's determination that Listing 12.05C was not met, in part, because plaintiff's "full scale IQ score was 70—the high end of the range for satisfying the Paragraph C criteria—and . . . her medical diagnosis was borderline intellectual functioning rather than [intellectual disability]"), *rep. & recomm. adopted by* 2013 WL 1315206, at *1 (28 Mar. 2013).

Moreover, following a psychological assessment conducted on 2 August 2013, less than two months prior to the IQ testing, licensed professional counselor William R. Powell diagnosed plaintiff with posttraumatic stress disorder, depression, and being a child victim of sexual abuse, but did not assess plaintiff to have any limitations in intellectual function. Rather, as the ALJ summarized in his decision, Mr. Powell found that

> while [plaintiff] exhibited a depressed mood and constricted affect, he otherwise exhibited cooperation, normal speech, full orientation, intact memory, normal fund of knowledge, intact judgment and insight, and *average intelligence*. The examiner also noted he accurately performed calculations and serial sevens and exhibited logical and organized thought processes, with no evidence of delusions or hallucinations.

Tr. 27 ¶ 5 (emphasis added) (referencing Tr. 783-84).

The ALJ's consideration of the skill level of plaintiff's past work was also appropriate. While work history "cannot preclude benefits where the Listing 12.05C criteria are otherwise met, *Luckey*, 890 F.2d at 669, [it] can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22." *Richardson v. Colvin*, No. 8:12-CV-03507-JDA, 2014 WL 793069, at *12 (D.S.C. 25 Feb. 2014) (citing *Hancock*, 667 F.3d 667 at 470). Plaintiff's ability to satisfy the requirements of semi-skilled positions is not consistent with intellectual disability. *See Hines v. Astrue*, 317 Fed. Appx. 576, 579 (8th Cir. 2009) (affirming the ALJ's discrediting of the plaintiff's IQ score on the basis of his past work in a semi-skilled

job and noting that the ability to perform a semi-skilled job is "inconsistent with [intellectual disability]"); *McDonald v. Colvin*, No. 4:12CV1313SNLJ, 2013 WL 5406612, at *10 (E.D. Mo.) (affirming the ALJ's rejection of plaintiff's IQ score determination in light of plaintiff's ability to perform semi-skilled work) , *rep. & recomm. adopted by* 2013 WL 5406612, at*1 (25 Sept. 2013).

Thus, the court concludes that the ALJ properly determined that the IQ requirement of Listing 12.05C is not met because plaintiff's qualifying IQ score is inconsistent with other substantial evidence in the record. The propriety of this determination alone dictates affirmance of the ALJ's determination that plaintiff does not meet Listing 12.05C because meeting the listing requires that the IQ requirement be met.

### 3. Diagnostic Definition

The ALJ found that plaintiff did not satisfy Listing 12.05C on the additional ground that he did not satisfy the diagnostic definition because he lacks the requisite deficits in adaptive functioning. The ALJ explained his ruling as follows:

> Moreover, Listing 12.05 requires evidence of deficits in adaptive functioning initially manifested during the developmental period (i.e., the evidence demonstrates or supports an onset of the impairment before age 22). The record reflects the claimant completed the tenth grade[7] and performed semi-skilled work activity as a construction worker and mechanic worker. The claimant also reported he watches television, picks up his son from daycare, attends church activities, does laundry and washes dishes. Moreover, the claimant was able to recount his medical history, follow instructions and participate in his medical evaluations, and he was able to answer questions completely and communicate effectively at the hearing. These factors, particularly the claimant's semi-skilled work history and the extent of his daily activities, suggest that the claimant does not have deficits in adaptive functioning as required by Listing 12.05.

---

[7] *See* Tr. 274 (plaintiff's statement in his application for DIB that he completed the tenth grade). *But see* Tr. 44, 57-58, 76 (testimony by plaintiff that he completed the eighth grade and quit school while in the ninth grade); 284, 287 (school records seemingly indicating that plaintiff's schooling ended in the ninth grade). Plaintiff does not directly challenge the ALJ's finding that he completed the tenth grade, and plaintiff's application arguably provides substantial evidence to support it. Even if the finding were deemed erroneous, plaintiff has certainly made no showing that the error was harmful to him. *See Garner*, 436 Fed. Appx. at 226 n.*

Tr. 22 ¶ 4.

Plaintiff contends that the ALJ improperly relied on evidence that is not probative of intellectual disability while failing to consider material evidence in the record on this issue. The court finds plaintiff's argument to be baseless because it is premised on a wholly inaccurate representation of the ALJ's consideration and express discussion of the relevant evidence.

Plaintiff first asserts that the ALJ improperly based his determination that plaintiff had no deficits in adaptive functioning "only on [the] very simple and mundane activities" of watching television, attending church activities, doing laundry, washing dishes, and picking up his son from daycare. (Pl.'s Mem. 8). While the ALJ did reference these activities of daily living, this was far from the only evidence that he considered, as the foregoing explanation by the ALJ shows. Thus, plaintiff's assertion that the ALJ limited his consideration to a short list of plaintiff's daily activities is defied by the decision on its face.

Plaintiff also wrongly accuses the ALJ of improperly considering plaintiff's "mere appearance and testimony" at the hearing as relevant to the determination on deficits in adaptive functioning. (Pl.'s Mem. 9). Actually, again as the ALJ's explanation shows, he considered plaintiff's ability "to answer questions completely and communicate effectively at the hearing," which is directly relevant to adaptive functioning. Tr. 22 ¶ 4; *see Jackson*, 467 Fed. Appx. at 218 (noting communication as an area in which deficits in adaptive functioning may exist).

Plaintiff further asserts, incredibly, that the ALJ "egregiously ignored" evidence demonstrating the presence of deficits in adaptive functioning. (Pl.'s Mem. 9). Specifically, he contends that the ALJ failed to consider that plaintiff

> enrolled in special education classes in school; he only advanced to 8th grade at age 16; he is unable to read his mail and he had to be administered an oral driver's license exam (evidence of his functional illiteracy); he has never lived

15
Case 5:14-cv-00853-D   Document 33   Filed 12/02/15   Page 15 of 20

independently; and [Dr. Akpaka] opined that he has limited ability for sustained concentration and persistence.

(*Id*.). Plaintiff's contention is, again, plainly contradicted by the decision.

In his decision, the ALJ expressly discussed plaintiff's enrollment in special education, his difficulty reading and writing, and his problems with concentration. Specifically, the ALJ noted:

> [The claimant] stated he was enrolled in special education classes until the ninth grade and that he has difficulty reading, writing and performing simple math. He reported he took an oral test to obtain his driver's license.
>     . . . .
> The claimant testified he has difficulty reading a newspaper and cannot write a shopping list. He reported he can generally understand movies and the news but that he has difficulty sustaining attention to watch television for more than 30 minutes.

Tr. 24 ¶ 5; 25 ¶ 5; *see also* Tr. 21 ¶ 4 (finding at step three of the sequential analysis that plaintiff has only moderate difficulties in concentration, persistence, or pace). The fact that these findings do not appear as part of the ALJ's explanation of his findings on deficits in adaptive functioning does not negate their relevance to those findings because the ALJ's decision must be read as a whole. *See*, *e.g.*, *Forbes v. Colvin*, No. 4:12–CV–211–FL, 2013 WL 4759086, at *8 (E.D.N.C.) (collecting cases), *mem. & recomm. adopted by* 2013 WL 4759086, at *3 (4 Sept. 2013).

As to plaintiff's contention that the ALJ did not consider the purported fact that "he has never lived independently," it is not apparent what plaintiff means. If he is suggesting that plaintiff has never lived by himself, he has not demonstrated how that alleged fact—which is true of many people with no mental impairments—shows that he has deficits in adaptive functioning, particularly in light of the other evidence of record. Such evidence includes, of course, evidence that plaintiff lives with his wife and three children, has a significant work history, and has a range of activities of daily living, all of which the ALJ discussed. *See*, *e.g.*, Tr. 21 ¶ 4; 22 ¶ 4; 24

¶ 5. The ALJ also found that "[t]here is no evidence of a current history of 1 or more years' inability to function outside a highly supportive living arrangement or outside the area of the claimant's home." Tr. 22 ¶ 4 (discussing inapplicability of Listing 12.04C and 12.06 to plaintiff). Plaintiff's contention regarding his purportedly not having lived independently accordingly fails.

As to Dr. Akpaka's opinion that plaintiff had limited ability for sustained concentration and persistence (*see* Tr. 826), the ALJ did discuss it. He stated:

> The undersigned has also considered the September 2013 opinion of Dr. Akpaka that the claimant is capable of understanding, retaining and following simple instructions and sustaining enough attention to perform simple repetitive tasks and routine. Dr. Akpaka stated the claimant also appears fairly capable of relating to others. However, he stated *the claimant's mental ability to perform tasks requiring sustained concentration and persistence* and his ability to tolerate the stress associated with daily work activity is significantly limited by his estimated below average intellectual functioning. Furthermore, in a questionnaire dated September 2013, Dr. Akpaka stated the claimant has no to moderate limitations in his ability to understand, remember and carry out instructions and no to moderate limitations interacting appropriately with others. (Exhibit 22F). *Little weight has been given to Dr. [Akpaka]'s opinion that the claimant is significantly limited in his ability to perform tasks requiring sustained concentration and persistence* and to tolerate the stress of daily work activity. Dr. [Akpaka] opined the claimant is limited in these areas due to his borderline intellectual functioning. However, the record reflects that the claimant has performed semiskilled work for a number of years, and Dr. [Akpaka] cited no significant concentration deficits upon mental status examination to suggest that the claimant's borderline intellectual functioning would limit the claimant to the degree he indicated. However, Dr. [Akpaka]'s other opinions have been given great weight in restricting the claimant to unskilled work with limited interaction with others.

Tr. 29 ¶ 5 (emphasis added); *see also* Tr. 21 ¶ 4 (finding at step three of the sequential analysis that plaintiff has only moderate difficulties in concentration, persistence, or pace). Accordingly, the court finds plaintiff's contention that the ALJ ignored Dr. Akpaka's opinion on concentration and persistence to be groundless.

Further, in complaining that the ALJ did not address the evidence discussed above, plaintiff failed to acknowledge the other evidence that the ALJ considered relating to whether plaintiff had deficits in adaptive functioning. Such evidence includes the psychological assessment by Mr. Powell discussed above.

That the ALJ did consider the mental impairments which plaintiff contends rose to the level of deficits in adaptive functioning is substantiated by the limitations he included in his RFC determination. As previously noted, the RFC limits plaintiff to "simple, routine and repetitive tasks, with instructions limited to oral form or by short demonstration. The claimant can sustain attention and concentration for 2-hour blocks at a time . . . ." Tr. 23 ¶ 5; *see also* Tr. 30 ¶ 5 ("The undersigned has also considered [plaintiff's] statements that he has difficulty reading in finding he requires instructions in oral form or by short demonstration.").

For the foregoing reasons, the court concludes that the ALJ's determination that plaintiff does not have the deficits in adaptive functioning required to satisfy the diagnostic description in Listing 12.05 was proper. Because the diagnostic definition in Listing 12.05 must be met to meet Listing 12.05C, irrespective of fulfillment of the other requirements, the propriety of the ALJ's determination that plaintiff does not meet the diagnostic definition is an independent basis for affirming the ALJ's determination that plaintiff does not meet Listing 12.05C.

### III. CONCLUSION

For the foregoing reasons, the court concludes that the Commissioner's decision is supported by substantial evidence of record, considering the record as supplemented by the Appeals Council, and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 30) for judgment on the pleadings be ALLOWED,

plaintiff's motion (D.E. 28) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel.  Each party shall have until 16 December 2015 to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions.  *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review.  In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.  *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 2nd day of December 2015.

_____
James E. Gates
United States Magistrate Judge